GILDEA, Chief Justice.
This case requires that we interpret the private attorney general statute, Minn. Stat. § 8.31, subd. 3a (2018). This statute provides that "any person injured by a violation of" certain laws the attorney general is tasked with enforcing can bring that person's own civil action. Specifically, we are asked to decide whether appellant Daniel Engstrom's payments to an attorney to investigate what appellant contends were fraudulent demands constitute an "injury" under the statute. The district court and court of appeals dismissed appellant's claim, concluding that he had not alleged "injury." Because we conclude that a person who is targeted by a fraudulent demand and consequently pays an attorney to investigate his liability in response to that demand has been "injured" within the meaning of the private attorney general statute, we reverse and remand for proceedings consistent with this opinion.
FACTS
According to Engstrom's complaint, his mother, Debra, purchased a timeshare interest in a property in the Brainerd area sometime between July 2001 and August 2002. Respondents ("Whitebirch") manage and own the timeshare property.[1]
*788 Debra died intestate on July 17, 2015. A little over a year after Debra's death, on August 26, 2016, Whitebirch sent Engstrom a letter claiming that he had a property interest in his mother's timeshare. Specifically, Whitebirch wrote that it had gone through the paperwork on the timeshare and "noticed Debra Engstrom added your name to the Deed in 2001." Whitebirch asserted that the deed "was filed with the county so both Debra Engstrom and Daniel Engstrom own this timeshare."
To support these assertions, Whitebirch attached two documents to its letter. First, Whitebirch included a "Joint Ownership Authorization" form purporting to show that Debra authorized Whitebirch to add Engstrom as an owner in 2001. Second, Whitebirch attached a photocopy of a deed claiming to show that Whitebirch conveyed the timeshare to Debra and Engstrom as "JOINT TENANTS (WROS)" on August 5, 2002. Whitebirch concluded its letter by instructing Engstrom to send a copy of Debra's death certificate and execute an attached quitclaim deed if he did not want to keep the timeshare. If Engstrom wanted to keep the timeshare, he was instructed to contact Whitebirch.
Engstrom did not believe that he owned an interest in the timeshare. After all, Engstrom alleged, Whitebirch had never delivered the purported deed to him before his mother's death, nor had it sent him any tax statements or maintenance-fee invoices over the 14 years that he had allegedly owned an interest in the property. In addition, Engstrom found it suspicious that the deed was dated over a year after his mother had purportedly signed the "Joint Ownership Authorization" form to add him as an owner.
On November 21, 2016, Whitebirch mailed Engstrom another letter, this time demanding unpaid maintenance fees in the amount of $1,300.75. A month later, Whitebirch sent a third letter. Again, Whitebirch demanded that Engstrom pay past-due maintenance fees, which were now in the amount of $1,984.75, or execute a quitclaim deed for the property.
In response, Engstrom sent Whitebirch a letter stating that he did not agree that he had an interest in the timeshare, that he would not execute a quitclaim deed, and that he would not pay the maintenance fees. Whitebirch responded that it would only release Engstrom from his obligation to pay maintenance fees if he executed a quitclaim deed.
In a final letter, dated May 1, 2017, Whitebirch demanded that Engstrom pay $2,067.95 in past-due fees or execute a quitclaim deed. Whitebirch further stated that if Engstrom refused, it would begin collection efforts and take legal action against him.
At some point during these exchanges-the record does establish exactly when-Engstrom hired and paid an attorney to investigate the validity of Whitebirch's demands and his liability.[2] During the investigation, *789 Engstrom learned that the deed had not been recorded with the county as Whitebirch had claimed. In addition, he alleged that he discovered multiple issues related to the notarization of the deed. First, the notary's signature was misspelled. Second, the notary had been disciplined in 2001 for attesting to backdated signatures. And third, the notary's commission was revoked on the date she purportedly notarized the deed. In fact, upon researching other Whitebirch deeds filed in Crow Wing County, Engstrom discovered that more than 300 other timeshare deeds bore the same revoked notary stamp and signature.
On May 17, 2017, Engstrom commenced this action in response to Whitebirch's threat to take legal action against him. Engstrom's complaint alleges two counts under the Minnesota Consumer Fraud Act, Minn. Stat. § 325F.69 (2018).[3] According to Engstrom, Whitebirch engaged in a pattern and practice of fraud whereby it created fake title instruments and used those instruments to trick timeshare owners' heirs into: (1) paying fees they do not owe; or (2) executing real-estate documents that create the appearance of clean title, allowing Whitebirch to bypass decedents' estates and resell the interests. Engstrom seeks to enjoin Whitebirch from engaging in this scheme and to recover damages, costs, and disbursements-including attorney's fees-that he incurred as a result of Whitebirch's misconduct.
Whitebirch filed a motion for judgment on the pleadings, arguing that Engstrom had failed to plead a cause of action under the private attorney general statute because he did not allege that he had been injured. The district court agreed and dismissed Engstrom's claims based on alleged violations of the Consumer Fraud Act because the complaint "nowhere alleges that Mr. Engstrom has been injured in any way." According to the district court, Engstrom did not suffer an injury because he did not pay "a single penny to Defendants in this matter." Put another way, Whitebirch gave Engstrom "an ultimatum, to either pay the fees associated with the timeshare or sign a quitclaim deed." Because Engstrom did not choose either option, the court reasoned, he was not injured. In addition, the district court determined that Engstrom could not allege injury to other timeshare owners whose deeds may be invalid or to Debra's estate to meet the injury requirement. Concluding that Engstrom had failed to plead an injury, the district court dismissed the counts based on violations of the Consumer Fraud Act for failure to state a claim.
Engstrom appealed the dismissal of his Consumer Fraud Act counts, arguing that he had suffered an injury by having to hire an attorney to respond to Whitebirch's fraudulent demands. The court of appeals affirmed the district court, concluding that "Engstrom has not sufficiently pleaded that he was injured by respondents' purported violation of the [Consumer Fraud Act]." Engstrom v. Whitebirch, Inc. , No. A18-0366, 2018 WL 4290056, at *4 (Minn. App. Sept. 10, 2018). Like the district court, the court of appeals reasoned that Engstrom was not injured because he was not induced into choosing one of the two options Whitebirch presented. Id. Further, Engstrom "could not have been injured by the conveyance of a property interest that he disclaims interest in." Id.
*790 We granted Engstrom's petition for review.
ANALYSIS
When reviewing whether a complaint fails to state a claim upon which relief can be granted, we must "accept the facts alleged in the complaint as true and construe all reasonable inferences in favor of the nonmoving party." Walsh v. U.S. Bank , 851 N.W.2d 598, 606 (Minn. 2014). The sole question on appeal is whether "the complaint sets forth a legally sufficient claim for relief." Zutz v. Nelson , 788 N.W.2d 58, 61 (Minn. 2010) (citation omitted) (internal quotation marks omitted). This is a question of law that we review de novo.[4] Walsh , 851 N.W.2d at 606.
Whether Engstrom's complaint sets forth a legally sufficient cause of action turns on the interpretation of Minnesota's private attorney general statute, Minn. Stat. § 8.31, subd. 3a. This statute provides that "any person injured by a violation of" the Consumer Fraud Act "may bring a civil action and recover damages, together with costs and disbursements, including costs of investigation and reasonable attorney's fees, and receive other equitable relief as determined by the court."[5] Thus, to bring a claim for a violation of the Consumer Fraud Act, Engstrom must plead that the defendant engaged in conduct prohibited by the Act and that this conduct injured him. On appeal, it is undisputed that Engstrom's complaint adequately pleads a violation of the Act.[6] Accordingly, we need only determine whether Engstrom was "injured" within the meaning of the private attorney general statute.
Engstrom argues that "hiring an attorney to investigate and resolve" fraud qualifies as an injury under the statute. According to him, Whitebirch's fraudulent demands "forced him to act" and suffer a *791 pecuniary loss. Whitebirch, on the other hand, argues that an injury "independent of attorney's fees is necessary to support a civil action under section 8.31." In essence, Whitebirch argues that, because a successful plaintiff may recover attorney fees at the end of the case, attorney fees cannot also constitute the "injury" the statute requires before a plaintiff can even bring the lawsuit.
Whitebirch's argument is unpersuasive. The attorney fees at issue at this stage of this litigation are not the fees Engstrom would recover if he prevails in his case. The attorney fees at issue are the fees Engstrom paid so that he could determine his liability in response to what he contends were fraudulent demands and threats from Whitebirch. For example, Engstrom claims that he paid an attorney to conduct a title search in response to Whitebirch's contention that Engstrom, as the owner of the timeshare, owed timeshare fees. If, as Engstrom believed, he had no property rights in the timeshare, then he would not owe the fees that Whitebirch threatened to collect from him. In other words, in order to determine his liability, Enstrom claims he paid an attorney, and therefore he was injured.
The private attorney general statute does not define "injury." See Minn. Stat. § 8.31, subd. 3a. Accordingly, we may look to dictionary definitions. Great N. Ins. Co. v. Honeywell Int'l, Inc. , 911 N.W.2d 510, 516 (Minn. 2018). The dictionary defines "injury" as "hurt, damage, or loss sustained." Webster's Third New International Dictionary 1164 (1961); see also, e.g. , Merriam-Webster's Collegiate Dictionary 601 (10th ed. 2001) (defining "injure" as "to inflict material damage or loss on"). We need not define for all time the "injury" required to trigger rights under the private attorney general statute. Whatever else it may include, there is no question that "injury" includes the pecuniary loss Engstrom alleges.[7]
In sum, Engstrom has alleged that Whitebirch's Consumer Fraud Act violations caused him a pecuniary loss; the allegation of pecuniary loss satisfies the "injury" requirement in the private attorney general statute. We express no opinion on whether Engstrom can prove causation and the other elements of his claim. We merely hold that Engstrom has alleged an injury sufficient to plead a cause of action under the private attorney general statute.
CONCLUSION
For the foregoing reasons, we reverse the decision of the court of appeals and remand to the district court for further proceedings consistent with this opinion.
Reversed and remanded.

Respondents are three companies that manage a single timeshare business, which we will refer to collectively as "Whitebirch."

Engstrom did not explicitly allege this fact in his complaint. He did, however, argue before the district court that he paid an attorney to "do title research" and "to inquire into [the notary] notarizing deeds when her commission was expired." In addition, Engstrom asserted at the court of appeals that he paid an attorney "to conduct title research, investigate [the notary's] notary commission, and to respond to Whitebirch." Whitebirch argued at the court of appeals that Engstrom should not be able to rely on these alleged facts because they were not pleaded in the complaint. Whitebirch does not, however, raise this argument to our court. Because Whitebirch does not argue that these allegations are not properly before us, we assume without deciding that the allegations of the complaint encompass Engstrom's payment to an attorney to investigate Engstrom's liability as described above. See Weavewood, Inc. v. S & P Home Invs., LLC , 821 N.W.2d 576, 578-79 n.1 (Minn. 2012) (assuming without deciding the sufficiency of a complaint).

In addition to the claims based on the Consumer Fraud Act, Engstrom's complaint contained four other counts. In response, Whitebirch brought a counterclaim and two third-party claims. The parties entered into a stipulation and dismissed some of the claims. The district court dismissed the rest. The dismissal of these claims is not at issue on appeal.

At the court of appeals, the parties disagreed on the standard of review. Engstrom argued that the standard was de novo because the district court dismissed the complaint on the pleadings. Whitebirch claimed that the summary-judgment standard should be used because both parties presented matters outside the pleadings at the district court. See Minn. R. Civ. P. 12.03. The court of appeals determined that de novo review was appropriate because the district court did not rely on matters outside of the pleadings. Whitebirch did not seek review of this determination, and, therefore, we also conduct a de novo review. See Madsen v. Park Nicollet Med. Ctr. , 431 N.W.2d 855, 858 (Minn. 1988).

Section 8.31 authorizes the Attorney General to investigate alleged violations of a series of statutes involving "unfair, discriminatory, and other unlawful practices in business, commerce, or trade," including the provision at issue here, Minnesota's Consumer Fraud Act, Minn. Stat. §§ 325F.68 -.70 (2018). Minn. Stat. § 8.31, subd. 1 (2018). Under the private attorney general statute, private plaintiffs injured by violations of these statutes are authorized to sue for the violations. In addition to proving injury from the violations, plaintiffs who bring claims under the private attorney general statute must also "demonstrate that their cause of action benefits the public." Ly v. Nystrom , 615 N.W.2d 302, 314 (Minn. 2000). That requirement is not at issue here.

This is true despite Whitebirch's argument that it did not concoct fake documents, perpetrate a fraud, or utilize the services of an unlicensed notary. When reviewing the dismissal of a complaint for failing to state a claim, we must "accept the facts alleged in the complaint as true." Walsh , 851 N.W.2d at 606. And Whitebirch does not dispute that Engstrom's allegations, if true, constitute violations of the Consumer Fraud Act. Thus, whether Whitebirch violated the Act is not at issue at this point in the litigation, despite Whitebirch's arguments about the merits of Engstrom's allegations. Whitebirch also argues for the first time on appeal that Minn. R. Civ. P. 9.02 -requiring plaintiffs to plead the circumstances of fraud with particularity-applies to Engstrom's complaint. Because this argument was not raised below, we do not consider it. See Dykes v. Sukup Mfg. Co. , 781 N.W.2d 578, 584 n.2 (Minn. 2010).

Engstrom and amici urge us to adopt a broad and comprehensive definition of what it means to be "injured" under the private attorney general statute. Because it is not necessary to do so to resolve this appeal, we decline this invitation. Specifically, we express no opinion on whether a person who has retained a pro bono attorney, spent time to personally investigate a fraudulent demand, or experienced emotional distress has been "injured" within the meaning of Minn. Stat. § 8.31, subd. 3a.