*This opinion is nonprecedential except as provided by
Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-0960**

Minnesota Citizens Concerned for Life, Inc.,
Appellant,

vs.

Joint Revocable Trust Agreement
of John N. Charais and Sveindis Charais, et al.,
Respondents.

**Filed April 22, 2024
Affirmed in part, reversed in part, and remanded
Bratvold, Judge
Concurring specially, Connolly, Judge**

Beltrami County District Court
File No. 04-CV-22-3290

B. Steven Messick, Messick Law, PLLC, Woodbury, Minnesota; and

Nicholas J. Nelson, Pamela Abbate Dattilo, CrossCastle PLLC, Minneapolis, Minnesota
(for appellant)

Joseph M. Windler, Jessica Timmington Lindstrom, Tess R. Olinger, Winthrop &
Weinstine, P.A., Minneapolis, Minnesota (for respondents)

Considered and decided by Connolly, Presiding Judge; Smith, Tracy M., Judge; and

Bratvold, Judge.

**NONPRECEDENTIAL OPINION**

**BRATVOLD**, Judge

Appellant nonprofit corporation challenges the district court's order dismissing its

complaint with prejudice under Minn. R. Civ. P. 12.02(e) for failing to state a claim upon

which relief can be granted. Appellant signed two agreements with the settlor/trustee for respondent trust; in both agreements, appellant agreed to accept a donation from the trust and to use the donation for specific purposes. After the settlor/trustee and appellant executed the agreements, the settlor/trustee wrote two checks from the trust's bank account. The next day, the settlor/trustee died. Appellant deposited the checks, but its bank refused to honor the checks because the trust's bank account had been closed. Appellant demanded payment from respondent successor trustee, the settlor/trustee's son, who refused. Appellant sued respondents—the successor trustee and the trust—alleging five claims, and respondents moved to dismiss.

We conclude that, at this early stage of the pleadings, the complaint sufficiently states a claim upon which relief can be granted for breach of contract, unjust enrichment, and promissory estoppel. But we also conclude that the complaint fails to state a claim upon which relief can be granted for breach of fiduciary duty and civil theft. Accordingly, we affirm in part, reverse in part, and remand.

**FACTS**

The following summarizes the complaint's factual allegations, stated favorably to appellant Minnesota Citizens Concerned for Life Inc. (MCCL) and accepting all facts as true.

In late January 2022, John N. Charais contacted MCCL, a nonprofit corporation, to "initiate a donation." John[1] had been "searching for the appropriate charity to support,"

---

[1] Because John N. Charais and respondent Nicholas J. Charais share the same last name, this opinion will use their first names for clarity. This opinion also refers to "the complaint"

2

saw that MCCL had organized a "March for Life" at the state capitol, and remembered his late wife's "deep commitment to the pro-life cause." At the time, John was the sole trustee of respondent Joint Revocable Trust Agreement of John N. Charais and Sveindis Charais (the trust). The trust document named John's son, Nicholas, as successor trustee and remainder beneficiary.

John and MCCL had seven or eight phone calls and three in-person meetings to discuss the donation. John told MCCL that he was selling some properties, including a farm, and wanted to donate the proceeds to a charity. John stated that he wanted MCCL to give part of his donation to the Mayo Clinic for cancer research and part to the Catholic Church in Reykjavík, Iceland, and to use the remainder for MCCL's "pro-life programs to protect unborn children." John asked MCCL to sign agreements confirming the donation amounts and intended uses "for the purpose of thwarting any potential legal challenge by his family and to ensure that his wishes were carried out."

Nicholas accompanied John to a meeting with MCCL on February 3, 2022. "John expressed his appreciation for the fact that Nicholas was supportive of his determination to make the donation to MCCL." At the end of the meeting, John "signed over" to MCCL a check from his title company for the sale of property. Later, MCCL's bank informed MCCL that, "due to the size of the check," John needed to deposit the sale proceeds into the trust's bank account and then issue checks from that account.

---

when discussing the second amended complaint—the subject of the district court's dismissal order.

On February 10, John and MCCL signed two agreements, both of which were attached to the complaint. The first agreement stated that MCCL "agree[s] to accept a donation of $307,571.30" from the trust, will give $100,000 to the Mayo Clinic "for the purposes of cancer research," will give $100,000 to the Catholic Church in Reykjavík, Iceland, and will use the remainder to support its "pro-life programs to protect unborn children."[2] The second agreement stated that MCCL "agree[s] to accept a donation of $533,948.15" from the trust and "commit[s] to using the donation . . . to support pro-life programs to protect unborn children." At the end of the February 10 meeting, John tendered two checks payable to MCCL from the trust's bank account for $307,571.30 and $533,948.15, respectively.

John died the next day, February 11. MCCL deposited the two checks in its bank account on February 14, and on February 23, the funds were credited to MCCL's bank account. On February 25, however, MCCL's bank informed MCCL that "it could not honor the funds" because the trust's bank account "had been closed." MCCL "learned" that Nicholas, who became the trustee upon John's death, "withdrew the funds and closed the trust's bank account" after John died. According to the complaint, Nicholas "intentionally interfered with the trust's donation to MCCL in order to divert those funds to himself for his personal use." MCCL demanded payment of the $841,519.45 from the trust, but MCCL's attempts to negotiate its claim failed, and Nicholas "refused to honor and reissue checks."

---

[2] John told MCCL that "his late wife was from Reykjavík and that the churches within the diocese were active in promoting the pro-life cause in Iceland."

On November 3, 2022, MCCL sued Nicholas, as trustee, and the trust (collectively, respondents) for breach of contract, unjust enrichment, promissory estoppel, breach of fiduciary duty, and civil theft.[3] On November 29, respondents moved to dismiss the complaint under Minn. R. Civ. P. 12.02(e) for failure to state a claim upon which relief can be granted. MCCL opposed dismissal.

After a hearing, the district court granted respondents' motion to dismiss and dismissed MCCL's complaint with prejudice. The district court determined, first, that "there was no gift" because John delivered two checks and did not deliver "the money." Second, as to the claim for breach of contract, the district court determined that "no enforceable contract existed" because "[t]here was no consideration." Third, the district court determined that the trust did "not include any gift, donation, or transfer" to MCCL, that respondents "did not unjustly receive any benefit by closing the account," and that, therefore, respondents "did not engage in unjust enrichment." Fourth, the district court determined that MCCL did not detrimentally rely on "the promise of money," and thus, the "elements of promissory estoppel are not met." Fifth, because "a contract did not exist," the district court stated, "there existed no fiduciary duty," and respondents "did not breach any fiduciary duties in this matter." Sixth, the district court determined that because MCCL "never had a property interest in the funds, civil theft did not occur."

MCCL appeals.

_____

[3] MCCL also brought a claim for conversion, which the district court dismissed. MCCL does not seek relief on appeal for its conversion claim.

5

**DECISION**

Appellate courts "review a district court's dismissal for failure to state a claim de novo." *Walmart Inc. v. Winona County*, 963 N.W.2d 192, 196 (Minn. 2021). Appellate courts "accept the facts alleged in the complaint as true and construe all reasonable inferences in favor of the nonmoving party." *Engstrom v. Whitebirch, Inc.*, 931 N.W.2d 786, 790 (Minn. 2019).

"Minnesota is a notice-pleading state and does not require absolute specificity in pleading, but rather requires only information sufficient to fairly notify the opposing party of the claim against it." *DeRosa v. McKenzie*, 936 N.W.2d 342, 346-47 (Minn. 2019) (quotations omitted) (reversing the rule 12.02 dismissal of plaintiff's complaint because "it does not appear with certainty that [plaintiff] will be unable to factually support his claims and request for relief"). A plaintiff's complaint may plead their case using "broad general statements that may be conclusory." *Id.* at 346. But "a legal conclusion in the complaint is not binding" on appellate courts. *Halva v. Minn. State Colls. & Univs.*, 953 N.W.2d 496, 501-02 (Minn. 2021) (concluding that allegations in plaintiff's complaint were "sufficient to survive a motion to dismiss").

Under Minn. R. Civ. P. 12.02(e), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." "A claim is sufficient against a motion to dismiss for failure to state a claim if it is possible on any evidence which might be produced, consistent with the pleader's theory, to grant the relief demanded." *Walsh v. U.S. Bank, N.A.*, 851 N.W.2d 598, 603 (Minn. 2014). A court may also consider documents referenced in a complaint or attached to a complaint. *N. States Power Co. v. Minn. Metro.*

6

*Council*, 684 N.W.2d 485, 490 (Minn. 2004). "[A] pleading will be dismissed only if it appears to a certainty that no facts, which could be introduced consistent with the pleading, exist which would support granting the relief demanded." *Halva*, 953 N.W.2d at 501 (quotation omitted). "And all pleadings shall be so construed as to do substantial justice." *Id.* (quotation omitted).

MCCL's brief to this court challenges the district court's rule 12.02(e) dismissal of its claims for breach of contract, unjust enrichment, promissory estoppel, breach of fiduciary duty, and civil theft, arguing that its complaint "alleges facts supporting each element" of these claims. We begin by noting that we have reorganized the issues to first consider MCCL's threshold argument that the complaint alleges John "made a completed and enforceable gift" to MCCL. We then address MCCL's contract claim and alternative equitable claims for unjust enrichment and promissory estoppel.[4] We finally consider MCCL's claims for breach of fiduciary duty and civil theft.

I. **MCCL's complaint fails to allege facts sufficient to state a claim for an enforceable gift.**

MCCL contends that the trust "made a completed and enforceable gift" to MCCL when John expressed his intent to make a gift from the trust and delivered the checks to

---

[4] MCCL's claims for unjust enrichment and promissory estoppel are pleaded in the alternative to its breach-of-contract claim. *See Martens v. Minn. Mining & Mfg. Co.*, 616 N.W.2d 732, 746 (Minn. 2000) (describing promissory estoppel as an equitable doctrine that "implies a contract in law where none exists in fact" (quotation omitted)); *Hommerding v. Peterson*, 376 N.W.2d 456, 459 (Minn. App. 1985) ("[A]n action for unjust enrichment is not based on the contract, but is a quasi-contractual agreement implied by law.").

MCCL.[5] The elements of a gift are "(1) delivery, (2) intention to make a gift on the part of the donor, and (3) absolute disposition by [the donor] of the thing which he intends to give to another." *Oehler v. Falstrom*, 142 N.W.2d 581, 585 (Minn. 1966). The supreme court has referred to absolute disposition as "surrender of control and dominion." *Cooney v. Equitable Life Assurance Soc'y of U.S.*, 51 N.W.2d 285, 288 (Minn. 1952); *see also Stribling v. Fredericks, Clark & Co.*, 219 N.W.2d 93, 95 (Minn. 1974) (describing the third element of an inter vivos gift as "unconditional surrender of future dominion and control by the donor over the property so delivered").

MCCL's complaint alleges that John, as trustee, tendered two checks from the trust's bank account as a donation or a gift to MCCL; John and MCCL signed two agreements discussing the donation and directing how MCCL should use the donation; MCCL deposited the checks; and MCCL's bank informed MCCL that it "could not honor the funds" because the trust's bank account "had been closed."

The district court determined that "there was no gift" because "the delivery of the checks does not constitute delivery of the money." On appeal, MCCL argues that the complaint alleges facts establishing "absolute disposition of the funds by John" because although "payment was stopped on the checks before they were cashed," Nicholas closed

---

[5] MCCL's brief to this court argues that the complaint alleges facts "sufficient to establish that an enforceable contract existed as a . . . gift" and thus that "the district court's decision should be overturned on [MCCL's] cause of action for breach of contract." But a gift is distinct from a contract. *See Deli v. Hasselmo*, 542 N.W.2d 649, 656 (Minn. App. 1996) ("[C]onsideration is what distinguishes a contract from a gift."), *rev. denied* (Minn. Apr. 16, 1996). Still, we consider whether MCCL's complaint alleges sufficient facts to state a claim for an enforceable gift because MCCL asserts the gift as a preface to its other claims.

the trust's bank account and refused to honor the checks, not John. Respondents argue that "there was no absolute disposition" because the "funds were never completely transferred" and "the trustee retained a power of revocation over the funds," citing *Laura Baker School v. Pflaum*, 30 N.W.2d 290 (Minn. 1947). MCCL responds that *Laura Baker School* is "distinguishable" because "there was no written contract between the donor and the school[,] . . . no mutual promises," and "it was the *donor herself* who cancelled the checks she issued to the school."

In *Laura Baker School*, the defendant donated by mailing a check of $5,000 payable to the school, but "[b]efore the check was presented to the bank for payment defendant stopped payment." 30 N.W.2d at 290-91. The school sued, and the district court granted judgment for the school on the pleadings. *Id.* at 290. On appeal, the supreme court considered whether the delivery of the check was a valid inter vivos gift. *Id.* at 291. The supreme court determined that "there was an intention to make a gift, a delivery of the check to the donee, and acceptance by the donee." *Id.*

The supreme court concluded, however, that "[t]here was not an absolute disposition by the donor of the gift which she intended to give plaintiff. The donor had the power of revocation, which she exercised before the check was presented to the bank for payment." *Id.* The supreme court reasoned that the "delivery of a check is not a delivery of money, but the delivery of an order" and that the "rule in most jurisdictions appears to be settled that the donor's check, prior to acceptance or payment by the bank, is not the subject of a valid gift." *Id.* at 291-92. Because the "defendant, the donor, did not part finally with dominion over the gift in question and exercised her power of revocation before the check

9

was presented to the bank for payment," the supreme court determined that "delivery of the check was not a valid gift inter vivos." *Id.* at 292. Thus, the supreme court reversed with directions to enter judgment for the defendant. *Id.*

We agree with MCCL that *Laura Baker School* is factually distinct because there was no written agreement between the donor and the school, there was no promise about how the funds would be used, and the donor revoked payment of the check. Still, these factual distinctions do not affect our analysis. MCCL's complaint fails to allege any facts for which evidence could be introduced consistent with the third element of an enforceable gift—absolute disposition of the property given by the donor. MCCL alleges only that John delivered two checks. A check is not money but merely an order for a bank to pay. *Id.* at 291. John's delivery of the checks to MCCL did not surrender control and dominion over the trust funds. *See Cooney*, 51 N.W.2d at 288. Because the trustee had the power to revoke payment, as did the defendant in *Laura Baker School*, the trust did not make an enforceable gift to MCCL.

MCCL contends that the rule in *Laura Baker School* does not apply here because Nicholas's closing of the trust's bank account was a "third party's unlawful interference." We reject this claim for two reasons. First, the complaint alleges that Nicholas was trustee at the time he closed the trust's bank account, so he was not a "third party." Second, MCCL cites no legal authority in support of its position that a check from a trust's bank account may not be revoked by a trustee before payment by the bank. The district court therefore did not err by concluding that MCCL's complaint fails to allege facts sufficient to state a claim for an enforceable gift.

10

**II.    MCCL's complaint alleges facts sufficient to state a breach-of-contract claim.**

MCCL contends that its complaint alleges facts sufficient to state a claim for breach of contract under both traditional contract rules and charitable-subscription caselaw. "The elements of a breach of contract claim are (1) formation of a contract, (2) performance by plaintiff of any conditions precedent to his right to demand performance by the defendant, and (3) breach of the contract by defendant." *Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014) (quotation omitted). Contract formation requires an offer, acceptance, and consideration. *Com. Assocs., Inc. v. Work Connection, Inc.*, 712 N.W.2d 772, 782 (Minn. App. 2006).

We begin by considering whether MCCL's complaint alleges facts sufficient to state a claim for breach of contract under traditional contract law. The district court dismissed MCCL's breach-of-contract claim because the complaint failed to allege facts showing consideration. The district court reasoned that MCCL's "agreement to distribute some funds to other organizations is not a detriment to [MCCL] because those funds were never intended for [MCCL]." In its brief to this court, MCCL argues that it "made certain commitments to John in exchange for the donation" and that "[t]hose mutual promises, made at the time the contracts were executed, are sufficient to establish consideration." Respondents argue that, "in order for consideration to exist, there has to be a resulting benefit or detriment incurred" and that "MCCL failed to allege any benefit incurred by the trust or trustee or any detriment to MCCL." In its reply brief, MCCL reiterates its theory that the parties' "promises alone are sufficient to establish consideration."

11

We address MCCL's argument that the complaint alleges consideration because the two agreements include "mutual promises." "A bilateral contract is one in which there are mutual promises between two parties to the contract; each party being both a promisor and a promisee." *Hartung v. Billmeier*, 66 N.W.2d 784, 789 (Minn. 1954) (quoting Restatement (First) of Contracts § 12 (1932)); *see Welsh v. Barnes-Duluth Shipbldg. Co.*, 21 N.W.2d 43, 47 (Minn. 1945) (providing that, for a bilateral contract to exist, "there must be reciprocity of obligation; that is, that each party should receive from the other an enforceable promise for the one he gave in exchange"). It is well established that "[s]uch [mutual] promises . . . are a sufficient consideration for each other." *Koehler & Hinrichs Mercantile Co. v. Ill. Glass Co.*, 173 N.W. 703, 704 (Minn. 1919).

Here, the parties signed two agreements in which MCCL "agree[s] to accept a donation" from the trust and "commit[s] to using the donation" in specific ways—either passing the donation on to other organizations or using it in its own programs. Neither agreement includes a promise by John or the trust. Because MCCL is the only party making promises in the two agreements, we conclude that the agreements lack consideration. *See, e.g.*, *Hartung*, 66 N.W.2d at 789 (concluding that there was no bilateral contract because only plaintiff made a promise). Because both agreements lack the consideration necessary to form a binding bilateral contract, MCCL's complaint fails to state a claim for relief under traditional contract law.[6]

---

[6] In the interest of being thorough, we note that the two agreements are not unilateral contracts. As explained in *Hartung*, "[w]hen a promise is . . . accepted by performance of the designated act or forbearance, the promisor's offer is converted into a unilateral contract which comes into being the moment the act or forbearance has been fully

Next, we consider MCCL's alternative argument that its complaint alleges a breach-of-contract claim based on "the charitable subscription standard for enforcement of a charitable donation," citing *Albert Lea College v. Brown's Estate*, 93 N.W. 672 (Minn. 1903), and *Horan v. Keane (In re Stack's Estate)*, 204 N.W. 546 (Minn. 1925). Respondents argue that these cases are "distinguishable" because "the suits were to enforce a promissory note—not a check" and that MCCL has not alleged facts showing that MCCL "became responsible for any conditions on the basis of [John's] attempted donation."[7] The district court did not address the charitable-subscription caselaw cited in MCCL's district court submission.

We first summarize the charitable-subscription caselaw cited in MCCL's brief.[8] In *Albert Lea College*, a member of the college's board of trustees executed and delivered to

---

performed." *Id.* Here, MCCL does not claim that the two agreements are unilateral contracts. MCCL has consistently claimed that the agreements are bilateral contracts and may not shift to a new theory on appeal. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (stating that a party cannot "obtain review by raising the same general issue litigated below but under a different theory"). Second, MCCL's complaint does not allege facts showing either that the two agreements included a promise by John or the trust or that MCCL accepted any promise by fully performing the act specified in the offer.

[7] Respondents also argue that the Uniform Commercial Code (UCC) "governs the enforceability of negotiable instruments, including the checks at issue in this matter" and that, under the UCC, "[r]espondents have an absolute defense to enforcement of the checks . . . because the checks were issued without consideration." MCCL responds that "[r]espondents' arguments confuse whether [MCCL] is seeking to enforce *checks* versus *written contracts*." We agree with MCCL that the UCC provisions on enforcing negotiable instruments do not govern our analysis of whether MCCL's complaint stated a claim for breach of contract regarding the two agreements between John and MCCL.

[8] The charitable-subscription caselaw specifically discusses consideration and breach-of-contract claims. We observe, however, that in *Stack's Estate*, the supreme court appeared to comment favorably on the connection between charitable-subscription caselaw

13

the college a "promissory note" payable to the college for $2,500 "to be used as an endowment." 93 N.W. at 672. The college accepted the note, but the board member died before paying the note. *Id.* The college filed a claim against the estate for payment of the note, and after a trial, the district court ordered judgment for the college. *Id.* at 672-73.

The supreme court affirmed, determining that "a sufficient consideration [was] shown to support the agreement." *Id.* at 675. The supreme court observed that the college "depended for its support, and to enable it to carry out its purposes, upon donations of philanthropists, and other charitably disposed persons." *Id.* The supreme court reasoned that, by accepting delivery of the promissory note, the college "thereby assumed the obligations imposed by the terms of the promise; and upon the strength of this promise, and others, were enabled to continue the purposes of the college, when, without it, it would have been necessary that they suspend operations and dissolve the corporation." *Id.* The supreme court concluded that it had "no difficulty holding that a sufficient consideration is shown to support the agreement." *Id.*

In *Stack's Estate*, the decedent executed a promissory note of $5,000 payable to a college. 204 N.W. at 546. The college had "created a fund to aid poor boys in getting an education," and the "decedent became interested" in the fund and "executed the note" payable to one of the college trustees. *Id.* "In soliciting [other] contributions, decedent's gift was frequently mentioned to induce others to make similar gifts." *Id.* Relying on these donations, "the trustees added largely to the buildings and equipment of the college and

---

and promissory estoppel but then added, "We shall not stop to consider the logic of the courts in their search for consideration in this class of cases." 204 N.W at 547.

14

broadened the field of instruction." *Id.* "[N]o attempt to collect" on the decedent's note occurred during his lifetime. *Id.* On behalf of the college, the trustee brought a claim against the decedent's estate. *Id.* After a trial, the probate court and the district court determined that the trustee had a valid claim against the decedent's estate. *Id.* at 548.

The supreme court affirmed, noting that "the principal question is whether there was a consideration for the note." *Id.* at 547. The supreme court stated that *Albert Lea College* provided "sufficient authority for the conclusion that payment of the decedent's note can be enforced." *Id.* The supreme court determined that "a subscription is valid and enforceable, although no consideration passed to the promisor at the time of his promise, if, in reliance on the promise, the promisee incurred liabilities or expended money in furtherance of the purposes of the subscription or became responsible for the performance of the conditions imposed by the subscriber." *Id.*

The facts of *Albert Lea College* and *Stack's Estate* are similar to those in MCCL's complaint, which alleges that the parties signed the two agreements, the trust "delivered" $841,519.45 to MCCL "in exchange for" MCCL's promise to deliver specified amounts to the Mayo Clinic and the Catholic Church in Reykjavík and to use the remainder for MCCL's own "work on pro-life programs to protect unborn children." The complaint also alleges that delivery of the checks "perfected the contract[s]," MCCL "relied on" the trust's funds, and MCCL was "disadvantaged" when respondents "breached the contract[s]" by "closing" the trust's bank account, "thereby cancelling the checks."

If we accept the facts alleged in MCCL's complaint as true, MCCL relied on the promised funds and *either* "incurred liabilities" to further the promises *or* "became

15

responsible" for performing "the conditions imposed" by the trust's donation. *Id.* MCCL accepted the trust's donation and the accompanying conditions as stated in the two agreements. At this early stage of the proceedings, we must assume that MCCL can offer evidence in support of its charitable-subscription claim as those requirements are set out in *Albert Lea College* and *Stack's Estate*. Accordingly, MCCL's complaint alleges facts sufficient to state a claim for breach of contract under the charitable-subscription caselaw. We thus reverse the district court's dismissal of this claim.

## III. MCCL's complaint alleges facts sufficient to state an alternative claim for unjust enrichment.

MCCL argues that the district court erred by dismissing its unjust-enrichment claim. "To establish an unjust enrichment claim, the claimant must show that the defendant has knowingly received or obtained something of value for which the defendant in equity and good conscience should pay." *ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc.* 544 N.W.2d 302, 306 (Minn. 1996) (quotation omitted). "[U]njust enrichment claims do not lie simply because one party benefits from the efforts or obligations of others . . . ." *First Nat'l Bank of St. Paul v. Ramier*, 311 N.W.2d 502, 504 (Minn. 1981). "Rather, the plaintiff must show that the defendant was enriched illegally or unlawfully or in a manner that is morally wrong." *Herlache v. Rucks*, 990 N.W.2d 443, 450 (Minn. 2023) (quotation omitted).[9]

---

[9] The supreme court recently granted review on the issue: "What factors should be reviewed when determining a statement is either immoral or illegal to meet the standards for an unjust enrichment claim?" *Heplf v. Meadowcroft*, No. A22-1706, 2023 WL 5341094 (Minn. App. Aug. 21, 2023), *rev. granted* (Minn. Nov. 28, 2023).

The district court dismissed MCCL's unjust-enrichment claim, stating that respondents "did not unjustly receive any benefit" because the "plain language of the trust does not include any gift, donation or transfer to" MCCL. The district court determined that respondents were "not required to honor the checks" and "did not unjustly receive any benefit by closing the [trust's bank] account." On appeal, MCCL argues that the district court erred when it "ignored [MCCL's] allegations that John agreed to, and in fact, tendered payment to [MCCL], and that Nicholas—who was fully aware of the contracts between John and [MCCL]—wrongfully retracted said payment for the purpose of keeping the proceeds himself." Respondents argue that Nicholas "did not unjustly receive any benefit by fulfilling his duties as trustee and closing the decedent's trust account" because it was "his duty . . . to secure trust assets" and "he was free to administer the trust as he saw fit."

If we accept the allegations in MCCL's complaint as true, as we must under rule 12.02(e), then John issued MCCL two checks from the trust's bank account and, after John's death, Nicholas closed the trust's bank account before the bank made payment on the checks. As also alleged in MCCL's complaint, Nicholas "intentionally interfered" with John's donation to MCCL "in order to divert [the trust's] funds to himself for personal use." Finally, MCCL's complaint alleges that Nicholas is "the sole beneficiary of the trust."

We conclude that MCCL's complaint sufficiently states a claim for unjust enrichment because the complaint alleges facts such that "it is possible on any evidence which might be produced consistent with [MCCL's] theory, to grant the relief demanded." *Walsh*, 851 N.W.2d at 603. Based on these allegations, we must accept as true that MCCL

17

could offer evidence that Nicholas interfered with John's donation to MCCL and, by closing the trust bank account, was "enriched illegally or unlawfully or in a manner that is morally wrong." *Herlache*, 990 N.W.2d at 450. Thus, the district court erred by dismissing MCCL's alternative claim for unjust enrichment.

## IV. MCCL's complaint alleges facts sufficient to state an alternative claim for promissory estoppel.

MCCL argues that the district court erred in its analysis of its other alternative equitable claim. Promissory estoppel "requires proof that 1) a clear and definite promise was made, 2) the promisor intended to induce reliance and the promisee in fact relied to his or her detriment, and 3) the promise must be enforced to prevent injustice." *Martens*, 616 N.W.2d at 746. "The promise must be such that it might reasonably induce the promisee's action or inaction." *Meriwether Minn. Land & Timber, LLC v. State*, 818 N.W.2d 557, 567 (Minn. App. 2012) (quotation omitted). This court has "required that there be some detriment in fact in order to show that a putative promisee's reliance has been detrimental." *Id.* at 568.

The district court dismissed MCCL's promissory-estoppel claim based on the second element, reasoning that MCCL "did not make any action or inaction to its detriment after receiving the promise of money from" John. On appeal, MCCL argues that its complaint alleges facts sufficient to show that MCCL relied on John's promises and donation. Respondents disagree, arguing that MCCL pleaded only "a legal conclusion" and "did not plead how it relied on [John's] payment, or what actions it took in such reliance."

As a notice-pleading state, Minnesota requires only that the pleading contain "information sufficient to fairly notify the opposing party of the claim against it." *Walsh*, 851 N.W.2d at 605 (quotation omitted); *see also DeRosa*, 936 N.W.2d at 346 (stating that Minnesota law permits "the pleading of broad general statements that may be conclusory" (quotation omitted)). Legal conclusions in the complaint, however, do not bind us. *Halva*, 953 N.W.2d at 501. But the supreme court has held that where a word may have a nonlegal, factual meaning, "to liken [the plaintiff's] use of the word . . . to a legal conclusion would run counter to the rule that [courts] are to liberally construe pleadings in favor of the pleader." *Walsh*, 851 N.W.2d at 607 n.3.

MCCL's complaint alleges that John gave MCCL two checks totaling $841,519.45 as orders to pay on the trust's bank account. In exchange, MCCL committed to using the funds as provided in the two agreements. MCCL deposited the checks in its bank, and the bank credited the funds to MCCL's account. The bank later informed MCCL that it "could not honor the funds." MCCL's complaint alleges that it "relied on the promise" of the funds and was "disadvantaged because [it] relied on said promise."

We liberally construe MCCL's complaint allegations in its favor. *See id.* We conclude that under Minnesota's notice-pleading standard, MCCL's complaint alleges sufficient facts such that it could produce evidence consistent with its promissory-estoppel theory and gain the requested relief. *See id.* at 603. Thus, the district court erred by dismissing MCCL's alternative claim for promissory estoppel.

19

**V.    MCCL's complaint fails to allege facts sufficient to state a claim for breach of fiduciary duty.**

MCCL contends that the district court erred in dismissing its claim for breach of fiduciary duty because respondents owe fiduciary duties to MCCL, which has standing as a third-party beneficiary to pursue relief. The elements of a breach-of-fiduciary-duty claim are (1) the existence of a fiduciary duty; (2) a breach of that duty; (3) causation; and (4) damages. *Hansen v. U.S. Bank Nat'l Ass'n*, 934 N.W.2d 319, 327 (Minn. 2019).

The district court dismissed MCCL's breach-of-fiduciary-duty claim on the first element, determining that "there existed no fiduciary duty." On appeal, MCCL concedes that it is "not asserting it is a beneficiary" of the trust. MCCL argues that it may nonetheless pursue a breach-of-fiduciary-duty claim because it "was a third-party beneficiary of the trust agreement," citing Restatement (Second) of Contracts § 302.[10] (Emphasis omitted.) Respondents argue that they "did not owe any fiduciary duty to MCCL because it is not a beneficiary of the trust, and the 'third-party beneficiary' doctrine does not apply" because "there is no recognized trust doctrine, statute, or case law that supports MCCL's third-party beneficiary theory in the trust context."

---

[10] Section 302 provides:

> Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
> > (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
> > (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

Restatement (Second) of Contracts § 302 (1981).

We agree with respondents. A trustee owes fiduciary duties to trust beneficiaries. *In re Revocable Tr. of Margolis*, 731 N.W.2d 539, 545 (Minn. App. 2007). A beneficiary is a person that "has a present or future beneficial interest in a trust, vested or contingent," or, "in a capacity other than that of trustee, holds a power of appointment over trust property." Minn. Stat. § 501C.0103(c) (2022). MCCL's complaint does not allege that it is a beneficiary of the trust; in fact, MCCL alleges that Nicholas is the "sole beneficiary" of the trust. As a result, MCCL lacks standing to assert a claim against respondents for breach of fiduciary duty.

We are not persuaded that the third-party-beneficiary doctrine applies here. MCCL cites no caselaw applying the third-party-beneficiary doctrine to trusts. Rather, MCCL cites a contract case in which the supreme court "adopted the intended beneficiary approach" from the Restatement (Second) of Contracts. *Cretex Cos. v. Constr. Leaders, Inc.*, 342 N.W.2d 135, 139, 141 (Minn. 1984) (determining that subcontractors were not intended third-party beneficiaries under a construction contract between a general contractor and a property owner). "[T]he task of extending existing law falls to the supreme court or the legislature, but it does not fall to this court." *Tereault v. Palmer*, 413 N.W.2d 283, 286 (Minn. App. 1987), *rev. denied* (Minn. Dec. 18, 1987). Thus, we decline to extend the third-party-beneficiary doctrine to trusts. Accordingly, we affirm the district court's order dismissing MCCL's claim for breach of fiduciary duty.

## VI. MCCL's complaint fails to allege sufficient facts to state a civil-theft claim.

Under Minnesota law, a "person who steals personal property from another is civilly liable to the owner of the property." Minn. Stat. § 604.14, subd. 1 (2022). This court has

interpreted the civil-theft statute to mean that a person steals by "wrongfully and surreptitiously tak[ing] another person's property for the purpose of keeping it or using it." *TCI Bus. Cap., Inc. v. Five Star Am. Die Casting, LLC*, 890 N.W.2d 423, 431 (Minn. App. 2017).

The district court dismissed MCCL's civil-theft claim, determining that MCCL "never had a property interest in the funds" because the "money in this matter was never transferred to" MCCL. On appeal, MCCL argues that its complaint "allege[s] facts . . . sufficient to establish that [MCCL] had a legitimate claim of entitlement to the funds promised and tendered by John." Respondents contend that MCCL "never had a property interest in the funds" because "the funds were never deposited into MCCL's bank account."

MCCL's complaint alleges that it deposited two checks drawn on the trust's bank account and that MCCL's bank credited the funds to MCCL's account but later informed MCCL that it "could not honor the funds because" the trust's "bank account had been closed." MCCL's complaint alleges that Nicholas withdrew the funds from the trust's bank account and closed the account, "making it impossible for the checks to be honored."

We conclude that MCCL's complaint fails to allege facts sufficient to show that the trust's bank account—or a portion of the funds in that account—was the personal property of MCCL. As the supreme court has stated, "[t]he delivery of a check is not a delivery of money, but the delivery of an order." *Laura Baker School*, 30 N.W.2d at 291. And MCCL's complaint specifically alleges that the trust's checks were not "honored," meaning no payment was made on the checks. Thus, MCCL cannot offer any evidence showing the

funds in the trust's bank account were MCCL's personal property. Because MCCL's complaint alleges that MCCL never received the funds from the trust, the complaint fails to allege facts showing a property interest in the trust's bank account. Accordingly, the district court properly dismissed MCCL's civil-theft claim.[11]

In sum, MCCL's complaint alleges facts sufficient to state claims for relief in breach of contract, unjust enrichment, and promissory estoppel, but fails to allege facts sufficient to state claims for relief in breach of fiduciary duty and civil theft. Thus, we affirm in part, reverse in part, and remand.

**Affirmed in part, reversed in part, and remanded.**

---

[11] Because we conclude that the trust funds were not MCCL's personal property, we need not address MCCL's arguments that the complaint alleges Nicholas stole the funds.

**CONNOLLY**, Judge (concurring specially)

I completely agree with the majority opinion, including the section of the opinion affirming the dismissal of the breach of fiduciary duty claim in this lawsuit because MCCL was not a beneficiary of the trust. At oral argument before this court, respondent's counsel informed the court that there is a separate probate proceeding relating to this trust in Hennepin County. I write separately to make clear that our decision on the breach of fiduciary duty claim in this appeal is not intended to have any bearing on that proceeding.