*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-1495**

Lakecia Gant, as trustee for the next-of-kin of
Raven Bianca Gant, deceased,
Appellant,

vs.

Daniel Ledman, in his individual capacity as an officer of
the Minneapolis Police Department, et al.,
Respondents.

**Filed May 28, 2024
Affirmed
Ross, Judge**

Hennepin County District Court
File No. 27-CV-22-9110

Oliver E. Nelson III, Magna Law Firm, LLC, Minneapolis, Minnesota (for appellant)

Kristyn Anderson, Minneapolis City Attorney, J. Haynes Hansen, Mark Enslin, Assistant City Attorneys, Minneapolis, Minnesota (for respondents)

Daniel J. Cragg, Eckland & Blando LLP, Minneapolis, Minnesota (for amicus curiae Minnesota Association for Justice)

Considered and decided by Ross, Presiding Judge; Johnson, Judge; and Kirk, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**ROSS**, Judge

This case arises from the 2019 Thanksgiving Day fatal shooting of a woman by the father of her children. The two Minneapolis police officers who are defendants in this civil action were dispatched to and arrived at a home where the woman had reportedly struck the man during a domestic dispute. After knocking and receiving no response, the officers left the home, discovered an occupied stolen vehicle, and began investigating the vehicle theft. The man soon re-called 9-1-1 to report that he and the woman were still in the home. Within 22 minutes after that call and within 4 minutes after the dispatcher informed the officers that the man was refusing to let the woman leave, the man shot and killed the woman. The woman's mother sued the officers and the city, claiming wrongful death caused by the officers' allegedly negligent investigation after the first calls and negligent response after the next. She appeals the district court's official-immunity dismissal of her civil action for failure to state a claim. Because the officers are officially immune from liability for their discretionary acts and the city is consequently vicariously immune, we affirm.

## FACTS

This wrongful-death negligence action brought by Lakecia Gant arises from the fatal shooting of her daughter, Raven Gant. Because Lakecia appeals from the district court's dismissal of her civil complaint for failure to state a claim under Minnesota Rule of Civil Procedure 12.02(e), we accept as true the factual allegations stated in her civil complaint and as further detailed in the police records that Gant provided to the district court and

relied on in the district court and in this court to contest the respondents' motion to dismiss her complaint.

Randall Watkins and Raven are the parents of a now-six-year-old girl. In the afternoon of Thanksgiving Day 2019, Raven went to Watkins's home in north Minneapolis with the girl to retrieve children's clothing. Minneapolis police were called to the home at that time over a dispute about the clothing.

At about 9:40 p.m., the Minneapolis police dispatcher directed Officers Daniel Ledman and Zerrick Fuller to a domestic disturbance at Watkins's home. Watkins and Raven had both dialed 9-1-1 to report their conflict. Watkins reported that Raven was refusing to leave his home and that she had just kicked him in the face. Raven reported that Watkins was refusing to give her clothes that belonged to their child. She told the dispatcher that she knows that Watkins tends to carry a pocketknife but that she had not seen him with a knife that day, and she reported that she believed he might have a gun somewhere in his house. The two officers arrived at the Watkins house about five minutes after receiving the dispatched call.

The officers approached the house but saw no one. They noticed that the house appeared to be dark inside. One officer knocked on the door, but no one answered. The officers heard no noise or voices from inside the house. The officers directed the dispatcher to call the person who had reported the incident. The dispatcher telephoned one of the callers but got no answer. The officers left the area. One of the officers needed to use the bathroom, and so they drove away from Watkins's house toward an area where he could use the facilities.

Watkins again called the dispatcher, reporting that he and Raven were still at the house. Approximately five minutes after the officers left the house, the dispatcher communicated that Watkins was requesting that police return and that he would be waiting at the front door.

At about 10:00 p.m., Officers Ledman and Fuller arrived at the area where one of them could use a portable restroom. And one of them saw a parked pickup truck that looked suspicious, with people lying down inside. The officers informed the dispatcher that they were with the vehicle and investigating. As one officer spoke with the pickup truck's occupants, the other checked on the vehicle's registration and learned that the pickup was stolen. The dispatcher therefore cleared them from the domestic-incident call at the Watkins house.

While Officers Ledman and Fuller investigated the stolen pickup and its occupants, Watkins again telephoned the 9-1-1 dispatcher. It was 10:08 p.m. This time, he told the dispatcher that Raven had just punched him in the face. The dispatcher directed a different squad car to the Watkins house. One minute later, Watkins told the dispatcher that Raven had called her father and others in her family to come to his house and assault him. About one minute later, Watkins told the dispatcher that Raven was refusing to leave the house. Meanwhile, Officers Ledman and Fuller were taking two juveniles into custody related to their stolen-pickup investigation.

At 10:12 p.m., in the background of Watkins's call, the dispatcher overheard Raven say that Watkins would not let her leave. One minute later, Watkins reported that Raven had again punched him. Thirty seconds later, Watkins said, "She ain't gone keep on

4

punching me." Then at 10:15, Watkins told the dispatcher that Raven needed emergency medical assistance and elaborated, "She's been shot." Officers Ledman and Fuller were at about that time driving the two detained juveniles to the juvenile unit at the Hennepin County jail. When they heard that a shooting had occurred at the Watkins house, they immediately dropped the two juveniles off at a bus stop and drove toward the Watkins house to assist the other officers who had been dispatched there.

Raven died due to the injuries she sustained when Watkins shot her. Her mother Lakecia Gant brought this action as trustee for the next-of-kin of Raven. Gant's civil complaint alleges that Officers Ledman and Fuller are principally liable for Raven's death and that the City of Minneapolis is vicariously liable. The district court granted the officers' and city's joint motion to dismiss the complaint for failure to state a claim on which relief can be granted. It did so after concluding that official immunity shielded the officers from liability. Gant appeals the resulting judgment.

**DECISION**

Gant appeals the district court's dismissal of her civil complaint. We review *de novo* a district court's dismissal for failure to state a claim under Minnesota Rule of Civil Procedure 12.02(e). *Halva v. Minn. State Colls. & Univs.*, 953 N.W.2d 496, 500 (Minn. 2021). In doing so, we accept the complaint's alleged facts as true and construe "all reasonable inferences in favor of the nonmoving party." *Engstrom v. Whitebirch, Inc.*, 931 N.W.2d 786, 790 (Minn. 2019) (quotation omitted). Because Gant incorporated the facts from the police reports into her opposition to the officers' and city's motion to dismiss and she likewise relies on them on appeal, we have incorporated those referenced details from

5

the reports as they align with the facts alleged in the complaint. For the following reasons, we affirm the district court's decision to dismiss Gant's complaint.

Gant raises two primary issues on appeal. She first challenges the district court's conclusion that official immunity bars her claims against the officers and the city. She next challenges the district court's conclusion that the officers did not owe Raven a duty under the special-duty doctrine. Although Gant's civil complaint also had alleged that the city is principally liable for Raven's death because it improperly hired, trained, and retained employees, specifically, Officers Ledman and Fuller and the dispatching staff, Gant is not appealing the city's dismissal except on the theory of vicarious liability for the officers' alleged negligence. We hold that the officers' conduct was discretionary, entitling them to official immunity from Gant's claims, and we therefore need not reach Gant's arguments regarding the special-duty doctrine.

We must decide whether the district court properly determined that official immunity bars Gant's claims against the officers. Public employees are entitled to official immunity, which bars state-law tort claims based on their performance of duties that arise from their exercise of independent discretion and judgment, except when they were perpetrating a willful or malicious wrong. *Mumm v. Mornson*, 708 N.W.2d 475, 490 (Minn. 2006); *Anderson v. Anoka Hennepin Indep. Sch. Dist. 11*, 678 N.W.2d 651, 655 (Minn. 2004). Although every Minnesota municipality is generally vicariously liable for the torts "of its officers . . . acting within the scope of their employment or duties," Minn. Stat. § 466.02 (2022), the inverse is also true. That is, if the officers are entitled to official immunity, their immunity extends to protect the city vicariously. *Wiederholt v. City of*

6

*Minneapolis*, 581 N.W.2d 312, 316 (Minn. 1998); *Pletan v. Gaines*, 494 N.W.2d 38, 43 (Minn. 1992); *see also Vassallo ex rel. Brown v. Majeski*, 842 N.W.2d 456, 465 (Minn. 2014) (clarifying unqualifiedly that "[county's] immunity stands or falls with [deputy's] immunity"). For the following reasons, we conclude that Officers Ledman and Fuller are entitled to official immunity and that the city is therefore entitled to vicarious official immunity.

We must first identify the allegedly negligent actions that Gant's complaint cites as the basis for her claim that the officers are subject to wrongful-death liability to determine whether the officers' actions constitute discretionary or ministerial duties. *See Vassallo*, 842 N.W.2d at 462. Gant's complaint alleges that, because every police officer in Minnesota "has a duty to arrest anyone whom the officer has probable cause to believe has committed domestic violence," and because "[a] reasonable peace officer" in Officer Ledman's and Officer Fuller's shoes "should have known that some problem was occurring, or, more precisely, [that] the caller was in jeopardy," they had a duty to "force[] entry into the residence" based on exigent circumstances, and they had a duty to take Watkins into custody based on "probable cause to arrest Watkins" without a warrant. The complaint adds that the city has a specific policy requiring its officers to "thoroughly investigate all allegations of domestic violence and aggressively utilize [their] arrest powers."

Gant's contention that the officers' purported duty to enter Watkins's home and arrest him for domestic assault was a ministerial rather than discretionary act faces two equally insurmountable obstacles. The first is that caselaw establishes that an officer's

7

decision whether to warrantlessly force entry into a person's home on a domestic-violence call is a discretionary rather than ministerial act. The second is that, in this case, the officers had no real discretion to warrantlessly force entry into Watkins's home because to do so would have violated the Fourth Amendment.

The decision whether to force entry without a warrant is a discretionary rather than ministerial duty. Gant's contention to the contrary fails under the supreme court's decision in *Elwood v. Rice County*. The *Elwood* case involved officers who responded to a reported domestic dispute involving a potentially armed man who threatened to harm himself and his ex-wife. 423 N.W.2d 671, 672–74 (Minn. 1988). The officers there had arrived at the home, knocked, and, when the door opened, they burst inside, pinning the man's father against a wall. *Id.* at 674. The *Elwood* court held that the officers' conduct was discretionary. *Id.* at 679. It recognized that officers who face emergency situations "must immediately judge whether probable cause and exigent circumstances justify entry without a warrant." *Id.* at 678. It considered the "broad standard for probable cause," observing that police, especially when responding to reported domestic disputes, must make quick decisions based on "notoriously volatile and unpredictable" circumstances. *Id.* It concluded that an officer's decision to enter a home without a warrant was the precise type of judgment the doctrine of official immunity protects. *Id.* at 679. Inasmuch as the decision to force entry is discretionary, so is the decision not to.

The similarly dispositive fact here is that, not only was the officers' decision whether to force entry discretionary, they had no constitutional authority to exercise that discretion in the manner that Gant says they must have. The Fourth Amendment enshrines

8

"[t]he right of the people to be secure in their . . . houses . . . against unreasonable searches and seizures." U.S. Const. amend. IV. And warrantless home entries by police are presumptively unreasonable. *Payton v. New York*, 445 U.S. 573, 586 (1980). Gant is correct that police may nevertheless force entry without a warrant if they face an exigent circumstance justifying them to do so. *See id.* at 589–90. Examples of this sort of exigent circumstance include officers pursuing a fleeing suspect or providing emergency aid. *State v. Paul*, 548 N.W.2d 260, 262, 265 (Minn. 1996) (pursuing suspect); *State v. Halla-Poe*, 468 N.W.2d 570, 572–73 (Minn. App. 1991) (providing emergency aid). But the officers here faced nothing resembling an exigent circumstance when they approached Watkins's home. They knew of the calls reporting that a domestic dispute had occurred involving a woman who believed a man was improperly refusing to hand her clothes that belonged to their child and that the woman had kicked the man. They knew that there might be a gun inside, but no one had reported that anyone had brandished or threatened to use any weapon. They arrived to find a darkened, quiet house. They knocked and got no response, and they directed the dispatcher to call the complainant and again got no response. Gant's allegation that these circumstances constituted an exigency that justified (and, according to her complaint, compelled) the officers to force entry and arrest Watkins for domestic assault finds no support in any caselaw that Gant provides or that we believe exists. The allegation simply has no legal or logical support.

Gant's complaint includes an alternative theory of liability, which is that "[d]espite being re-dispatched to the residence and despite knowing the situation was progressively deteriorating, Ledman and Fuller chose not to respond." But the documents Gant provided

9

to respond to the motion to dismiss elaborate on these officers' choice not to respond. According to the civil complaint and police reports that detail Gant's factual allegations, one of the officers had to find a bathroom to relieve himself after they left Watkins's house, and as soon as they arrived at the location where he could do so, they happened upon a stolen vehicle occupied by two suspects and began investigating. Although the complaint and police reports indicate that Watkins had recontacted police, reported that he and Raven were still present in the house, and requested police to meet him at his door, at the time of that call the officers were no longer near the house and were investigating another crime. And at that point, police had been told only that Raven, not Watkins, was the aggressor. Police work requires officers to make immediate decisions based on very little information. *Kelly v. City of Minneapolis*, 598 N.W.2d 657, 665 (Minn. 1999). The factual allegations imply the decision the officers faced at that point: they could either continue to investigate the stolen-vehicle crime and have the dispatcher send different officers to the reported domestic assault, or they could leave the stolen vehicle and its suspicious occupants and begin driving back toward the Watkins house. We do not here consider whether either option was more reasonable; to answer the question of official immunity, we consider only whether making the decision was discretionary. We have no difficulty concluding that the officers' decision to continue investigating one crime instead of leaving it to investigate another was discretionary.

We need not address whether the officers' discretionary decision not to enter Watkins's home and their later decision whether to return fall outside the protection of official immunity on a theory that the decisions were undertaken maliciously. *See Vassallo*,

842 N.W.2d at 462. This is because Gant does not contend that they were, and no allegations in the complaint remotely suggest it. We conclude that the officers are entitled to official immunity and that the city is consequently entitled to vicarious official immunity.

We are not persuaded otherwise by Gant's contention that the district court relied improperly on evidence outside the pleadings to decide the question of official immunity. We have addressed *de novo* the question of the respondents' motion to dismiss. In doing so, we have relied only on the facts in Gant's complaint and the material Gant supplied to the district court in her opposition to the motion to dismiss. Our decision rests properly on the facts alleged construed in Gant's favor. Gant also unpersuasively asserts that the district court should have afforded her the opportunity to conduct discovery before dismissing her complaint, contending essentially that discovery could have revealed evidence proving that Minneapolis officers have no discretion but to make arrests for domestic abuse when probable cause exists. Our decision affirming the dismissal would be unaffected by evidence of this alleged fact because we have held that the officers lacked exigent circumstances to enter Watkins's house to arrest him. Discovery therefore would not change our holding that the officers' decision not to enter was discretionary.

In sum, we conclude that the officers' decision not to forcibly enter Watkins's home without a warrant required their discretion to assess whether exigent circumstances existed. We also conclude that their decision not to immediately leave their stolen-vehicle investigation to return to the domestic-abuse investigation was likewise discretionary. The officers are therefore officially immune from suit and the city is vicariously officially

11

immune. The district court appropriately dismissed Gant's civil complaint for failure to state a claim.

**Affirmed.**